## IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF ARKANSAS
## FAYETTEVILLE DIVISION

**3A COMPOSITES USA, INC.**                                                    **PLAINTIFF**

**V.**                                          **CASE NO. 5:14-CV-5147**

**UNITED INDUSTRIES, INC. and**
**WESLEY PAULIN**                                                              **DEFENDANTS**

### MEMORANDUM OPINION AND ORDER

Currently before the Court are Plaintiff 3A Composites USA, Inc.'s ("3A") *Daubert*

Motion to Exclude Testimony of L. Sue Talkington (Doc. 100) and Brief in Support (Doc.

101), Defendants United Industries, Inc.'s ("United") and Wesley Paulin's Response (Doc.

115) and Brief in Support (Doc. 116), and 3A's Reply (Doc. 125); 3A's Motion in Limine

to Exclude Evidence of Prior Acquisition Negotiations (Doc. 105) and Brief in Support

(Doc. 106), and Defendants' Response (Doc. 122) and Brief in Support (Doc. 123); and

3A's Motion to Seal Trial Exhibits and Close the Courtroom (Doc. 113) and Brief in

Support (Doc. 114), and Defendants' Response (Doc. 120) and Brief in Support (Doc.

121).

The Court held a pretrial conference on November 4, 2015, and after hearing oral

argument on these motions, ruled from the bench that all three of these motions were

**GRANTED IN PART AND DENIED IN PART**.  This Opinion and Order explains the basis

for the Court's decision, and provides greater specificity as to the contours of the Court's

ruling.  To the extent anything in this Order differs from what the Court stated from the

bench, this Order will control.

1

## I. 3A'S *DAUBERT* MOTION TO EXCLUDE TESTIMONY OF L. SUE TALKINGTON

United retained L. Sue Talkington, a certified public accountant, to offer an expert opinion in rebuttal to 3A's damages expert, Mr. William A. Barbee. In her report, Ms. Talkington critiques Mr. Barbee's methodology and conclusions without offering any alternative methodology or conclusions of her own. 3A argues that Ms. Talkington's testimony "is independently inadmissible under the standards of both Federal Rule of Evidence ("FRE") 702 and FRE 403" because she "offers her opinion without identifying *any* alternative methodology or assumptions that Mr. Barbee should have used, nor does she offer any rebuttal damages figure." (Doc. 101, p. 1). In support of this argument, 3A cites a case from the Northern District of Florida: *B-K Cypress Log Homes Inc. v. Auto-Owners Ins. Co.*, 2012 WL 1933766 (N.D. Fla. May 25, 2012).

3A accurately characterizes *B-K Cypress*, which states:

> The Court concludes that as a pure rebuttal opinion that does not offer any alternative methodology or analysis, [the expert]'s testimony would not aid the jury in determining the amount of damages, if any, to award to B-K Cypress. The criticisms raised in [the expert]'s report may be explored through cross-examination of [B-K's expert] and B-K's other witnesses. Under the circumstances of this case, it is unnecessary and unduly prejudicial to present evidence that is directed to the weight and credibility of [B-K's expert]'s testimony by way of a rebuttal expert.

*Id.* at \*6. However, this Court believes more persuasive guidance can be found in a 2011 case from the District of Minnesota.

In *Aviva Sports, Inc. v. Fingerhut Direct Marketing, Inc.*, the plaintiff made the same argument that 3A is making here—that "by only criticizing Aviva's experts and performing no analysis of their own, . . . these experts do not identify any reliable principles or methods nor do they apply such principles or methods to the facts of the case—they merely identify flaws without establishing whether any of those flaws would have provided

2

different results."  829 F. Supp. 2d 802, 834 (D. Minn. 2011).  The *Aviva Sports* Court

ruled the rebuttal expert testimony admissible under Fed. R. Evid. 702, explaining that:

> It is the proper role of rebuttal experts to critique plaintiff's expert's
> methodologies and point out potential flaws in the plaintiff's experts' reports.
> The . . . rebuttal experts sufficiently applied their expertise to the facts and
> methodologies used by each of Aviva's experts in forming their conclusions.
> Thus, their testimony is not unduly speculative.

*Id.* at 835.  Along the way, the *Aviva Sports* Court cited five other courts from around the

country that "have held that rebuttal expert witnesses may criticize other experts' theories

and calculations without offering alternatives."  *Id.* (citing *Coquina Invs. v. Rothstein*, 2011

WL 4949191, at *5 (S.D. Fla. Oct. 18, 2011); *Pandora Jewelers 1995, Inc. v. Pandora

Jewelry, LLC*, 2011 WL 2295269, at *6 (S.D. Fla. June 8, 2011); *1st Source Bank v. First

Res. Fed. Credit Union*, 167 F.R.D. 61, 65 (N.D. Ind. 1996); *Deutsch v. Novartis Pharm.

Corp.*, 768 F. Supp. 2d 420, 481 (E.D.N.Y. 2011); *In re Cessna 208 Series Aircraft Prods.

Liab. Litig.*, 2009 WL 1649773, at *1 (D. Kan. June 9, 2009)).  The *Aviva Sports* Court

also declined to rule the rebuttal expert testimony inadmissible under Fed. R. Evid. 403,

explaining that "the Court cannot conclude at this time that these experts' testimony would

be cumulative to the cross-examination of Aviva's expert witnesses.  Whether the

testimony would be cumulative depends on the evidence elicited during trial."  *Id.*

Drawing from the reasoning in *Aviva Sports*, this Court will permit Ms. Talkington

to provide expert opinion testimony in rebuttal to Mr. Barbee's testimony without offering

any alternative methodology or conclusions of her own (assuming a proper foundation

has been laid), to the extent that Ms. Talkington's testimony meets each of the following

three conditions: (1) it criticizes the specific methodologies employed or the calculations

derived from those methodologies by Mr. Barbee; (2) it aids the jury in its fact-finding role;

and (3) it was previously disclosed to 3A, either in Ms. Talkington's expert report or in her deposition. However, the Court will defer ruling on the admissibility of any *particular* rebuttal opinion until after Mr. Barbee has testified. At some point following Mr. Barbee's testimony but prior to Ms. Talkington's testimony, Counsel for United must proffer to the Court the opinion testimony it anticipates being provided by Ms. Talkington, at which time the Court will make rulings as to the admissibility of specific opinions—following a *voir dire* of Ms. Talkington if necessary.

## II. 3A'S MOTION IN LIMINE TO EXCLUDE EVIDENCE OF PRIOR ACQUISITION NEGOTIATIONS

United intends to introduce evidence of prior negotiations between the parties regarding whether 3A would acquire United. 3A seeks to exclude such evidence under Fed. R. Evid. 402 or 403, arguing that it is irrelevant to the claims and defenses in this case and substantially more prejudicial than probative. United responds:

> The history of the negotiations of the parties is highly relevant for any jury to understand why the parties behaved the way they did, up to and including the filing of this lawsuit. United did not steal trade secrets because they wanted to compete unfairly with 3A[;] United was trying to preserve the family business that had been carefully built and nurtured for decades.

(Doc. 123, p. 2). 3A, however, counters that intent is not an element of either cause of action, and that admitting this evidence would allow United to elicit undue sympathy or prejudice by portraying 3A as a bully against a weaker local competitor.

The Court believes the nature and history of the parties' business relationship is "of consequence in determining the action," Fed. R. Evid. 401(b), as some factual context beyond the bare material dispute is necessary to aid the jury in understanding this rather complicated case. At this time, the Court is willing to allow historical testimony about the parties' relationship, including the facts that there was a failed acquisition negotiation and

4

that United provided sensitive information to 3A during this negotiation. However, at this time the Court believes the risk of unfair prejudice substantially outweighs any relevance held by United's contention that during the acquisition negotiations 3A expressed the intent to close down an Arkansas plant; therefore the Court will not allow any testimony regarding that fact. Fed. R. Evid. 403.

The Court is willing to reconsider this ruling at trial if appropriate. In particular, if 3A puts on evidence of United's willfulness or maliciousness, see Ark. Code Ann. § 4-75-607, then that might open the door for United to present rebuttal testimony regarding its motivations that would otherwise have been excluded under this ruling. In such an event, the Court would also likely be willing to provide a limiting instruction to the jury upon request.

## III. 3A'S MOTION TO SEAL TRIAL EXHIBITS AND CLOSE THE COURTROOM

3A asks this Court to close the courtroom during periods of the trial where trade secret evidence is presented, and to seal exhibits introduced during such periods. In support of this Motion, 3A cites Ark. Code Ann. § 4-75-605, which states that in an action under the Arkansas Trade Secrets Act ("ATSA"), a court "shall preserve the secrecy of an alleged trade secret by reasonable means, which may include . . . holding in camera hearings [and] sealing the records of the action." 3A also cites In re Iowa Freedom of Info. Council, in which the Eighth Circuit held that at a contempt hearing where trade secrets were involved, "substantial damage to P&G's property rights in these secrets would have occurred had the hearing not been closed," and that "no reasonable alternative existed to closure, sufficient to protect these property rights." 724 F.2d 658, 661 (8th Cir. 1983).

In opposition, United argues that the Protective Order in this case is sufficient to protect any trade secret evidence introduced by the parties at trial, by filing such evidence under seal. United also points out that under *In re Iowa Freedom of Info. Council*, the Court cannot hold an in camera hearing to protect trade secrets without first finding that trade secrets actually exist and are at issue in the case. 724 F.2d at 662. Considering that the existence of trade secrets is one of the most central and hotly contested matters to be determined at trial, it seems odd, to say the least, for the Court to be deciding prior to trial whether trade secrets exist here. The Court would also note that it has some concern as to whether, under *In re Iowa Freedom of Info. Council*, a decision to close the courtroom could potentially run afoul of the First Amendment. *See* 724 F.2d at 661.

The decision whether to close the courtroom pursuant to Ark. Code Ann. § 4-75-605 is committed to the discretion of the Court. *See Bendinger v. Marshalltown Trowell Co.*, 338 Ark. 410, 424 (1999). 3A has not persuaded the Court that there is no reasonable alternative to closure, so—at least for now—the Court is unwilling to close the courtroom to the public. The Court is not aware of any expected testimony that would contain information that a typical layperson would be able to use to 3A's economic detriment. The Court believes that 3A's privacy interests can be adequately protected by sealing the exhibits that are introduced at trial for the duration of the trial. Upon the trial's conclusion, the parties are instructed to confer in good faith as to which trial exhibits should be considered sealed for purposes of any appellate record. If they cannot agree, then they may notify the Court at that time, and the Court will resolve their dispute.

The Court is willing to revisit its decision not to close the courtroom if the circumstances warrant it. For example, if a person is present in the courtroom that neither

side recognizes, the Court would entertain a request by either party to have its court security officer inquire as to the spectator's identity and interest in the case; if it can be established that the person represents a direct competitor to one of the parties, then that might be a situation where the Court would be willing to close the courtroom for a limited period. However, any requests to close the courtroom may not be made in the presence of the jury. Rather, counsel must make such requests during a break, if possible; if not, then counsel must request a sidebar.

### IV. CONCLUSION

**IT IS THEREFORE ORDERED** that Plaintiff 3A Composites, Inc.'s *Daubert* Motion to Exclude Testimony of L. Sue Talkington (Doc. 100), Motion in Limine to Exclude Evidence of Prior Acquisition Negotiations, and Motion to Seal Trial Exhibits and Close the Courtroom (Doc. 113) are all **GRANTED IN PART AND DENIED IN PART**, as elaborated above.

**IT IS SO ORDERED** on this ___ day of November, 2015.

TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE